24476

ST. ANDREWS PUBLIC SERVICE DISTRICT, on behalf of itself and as representative of all Bondholders of St. Andrews Public Service District Outstanding General Obligation Bonds; Mrs. Ethel G. Bonner, a Bondholder of St. Andrews Public Service District General Obligation Bonds, dated as of August 1, 1985, and June 1, 1992, on behalf or herself and as representative of all similarly situated bondholders who hold outstanding St. Andrews Public Service District General Obligation Bonds and, as a taxpayer residing in the St. Andrews Public Service District whose property has not yet been annexed into the City of Charleston, on behalf of herself and all other taxpayers similarly situated, Appellants v. Peggy MOSELEY, Auditor of Charleston County in her official capacity, W.O. Thomas, Jr., Treasurer of Charleston County in his official capacity, and the City of Charleston, South Carolina, Respondents.

(475 S.E. (2d) 750)

Supreme Court

*Leo H. Hill, Hill, Wyatt, Bannister & Brown,* Greenville; and *Richard B. Watson, Nelson, Mullins, Riley & Scarborough,* Charleston, *for appellants.*

*Frances I. Cantwell, Assistant Corporation Counsel,* Charleston, *for respondent City of Charleston.*

*A. Arthur Rosenblum, Court Attorney,* Charleston, *for respondents Moseley* and *Thomas.*

Heard June 18, 1996.

Decided Aug. 12, 1996; Reh. Den. Sept. 19, 1996.

WALLER, Associate Justice:

On appeal is an order of the Master-in-Equity denying appellants' petition for a writ of mandamus to require Respondents, the auditor and treasurer of Charleston County, to levy taxes on certain properties annexed from the St. Andrews Public Service District (District) into the city of Charleston (City). We affirm.

## FACTS

District was created in 1949 to operate water and sewer systems and furnish fire protection facilities in an area across the Ashley River from the City of Charleston. Act. No. 443, 1949 S.C. Acts 1915. District is authorized to issue general obligation bonds to finance facilities which provide governmental services. Upon issuance of such bonds, the District's full faith and credit is irrevocably pledged and the county auditor is required to annually levy "a tax without limit on all taxable property in the special purpose district sufficient to pay the principal and interest of such bonds as they respectively mature. . . ." S.C. Code Ann. § 6-11-990 (1976).

Since 1960, City has, on several occasions, annexed portions of District.[1] As properties were annexed from District into the City, the county auditor removed them from District's tax rolls and placed them on City's tax rolls. Appellants, bondholders and taxpayers who reside in District, instituted this action seeking a writ of mandamus to compel the county auditor and treasurer to levy and collect ad valorem taxes on all properties which were located within its boundaries at the time of issuance of certain bonds,[2] regardless of the properties' subsequent annexation into the municipality. The matter was referred to the Master[3] who held the annexed properties were no longer subject to tax for debt service on District's bond obligations.

## ISSUES

1. Does property located within a special purpose district at the time of issuance of general obligation bonds remain liable

---

[1] Upon annexation, City began providing governmental services. The record reveals that further services provided to the properties by District were incidental.

[2] The only bonds presently in dispute are those issued in 1985 and 1992.

[3] The order of reference provides for direct appeal to this Court.

for payment of debt service on the bonds, notwithstanding the property's subsequent annexation into a municipality?

2. Does the failure of the auditor and treasurer to levy taxes on properties annexed from a special purpose district into a municipality constitute an impairment of the district's contractual obligations or violate the equal protection rights of those taxpayers who remain in the district?

## 1. EFFECT OF ANNEXATION

■ District contends that annexed property remains in the special purpose district for purposes of taxation. We disagree.

In 1960, subsequent to annexation of a portion of District by City, the General Assembly recognized that the "area and jurisdiction [of District had] been **diminished by operation of law, by the annexation by the City of Charleston....**" Act. No. 973, 1960 S.C. Acts 2285. (Emphasis supplied.) In light of this recognition, the General Assembly specifically set forth those prior obligations of District which City was to assume. Act No. 972, 1960 S.C. Acts. 2282. *See also* Act. No. 495, § 1, 1961 S.C. Acts 913. The General Assembly also recognized that "a considerable portion of the assessed taxable property of St. Andrews Public Service District is being taken from the District, [and] that it is equitable that the city assume [certain bond] obligations." *Id.* at 2283. These acts make clear that the property, upon annexation, was no longer in the public service district. *See also St. Andrews Public Service District v. Commissioners of Public Works*, 289 S.C. 68, 344 S.E. (2d) 857 (Ct. App. 1986).

District analogizes this case to school district cases in which former school districts were found liable for prior obligations notwithstanding their merger into a larger district. *See Tindall v. Byars* 217 S.C. 1, 59 S.E. (2d) 337 (1950); *Walpole v. Wall*, 153 S.C. 106, 149 S.C. 760 (1929). Those cases, however, involved situations in which the preexisting school district still received benefits from the bond obligations. *Accord Moseley v. Welch*, 209 S.C. 19, 37, 39 S.E. (2d) 133, 142 (1946) (recognizing property became the property of the consolidated district such that it was not a case of requiring taxpayers of one school district to help pay the debts of another school district without receiving anything in return). In the

present case, the properties in question have, since annexation, received municipal services from the City; District provides only incidental services, which arise out of its service to non-annexed properties.

Accordingly, we find that, upon annexation, the property was no longer "in the district."

## 2. IMPAIRMENT OF CONTRACT/EQUAL PROTECTION

District also contends that, even if the annexed property is no longer considered "in the district" for tax purposes, the property nonetheless remains liable for bonded indebtedness incurred prior to annexation. To hold otherwise, it contends, will impair its contractual obligations in violation of Article I, § 8 of the S.C. Constitution and will violate the equal protection[4] rights of remaining property owners in the District. We disagree.

When bonds are issued, there arises a contract between the purchaser and seller, which obligation may not be impaired in violation of the contract clause, S.C. Const. article 1, § 8. *Welch v. Getzen*, 85 S.C. 156, 67 S.E. 294 (1910). There is a three-step inquiry for determining the existence of a contract clause violation. First, there must, as a threshold matter, be an actual impairment of the contract at issue. *Alston v. City of Camden*, — S.C. —, 471 S.E. (2d) 174 (1996) (Davis Adv. Sh. No. 13 at 26). Second, the impairment must be substantial. Finally, if there is substantial impairment of a contractual obligation, the contract clause is not violated if the law being challenged is reasonable and necessary to carry out a legitimate governmental purpose. *Id.*

Here, it is undisputed that District has been able to meet its bond obligations. In fact, District alleged in its complaint only that its bondholders' investments had become "less secure," and that its borrowing powers had been threatened. Clearly, there is no actual impairment at the present time, and, accordingly, there can be no violation of the contract clause.[5]

---

[4] S.C. Const. Art. I, § 3.

[5] We are unpersuaded by District's contention that our holding today will wreak havoc upon the municipal bond market. If City's annexations cause an actual, substantial impairment of its obligations, District may, at that time, raise a contract clause claim.

Finally, District claims an equal protection violation inasmuch as the properties remaining in the District are, or may be, subjected to higher taxes.

The requirements of equal protection are satisfied if (1) the classification bears a reasonable relationship to the legislative purpose sought to be effected; (2) the members of the class are treated alike under similar circumstances and conditions; and (3) the classification rests on a reasonable basis. *Smith v. Smith*, 291 S.C. 420, 354 S.E. (2d) 36 (1987).

Here, the annexed property is clearly not similarly situated to the non-annexed property. It is no longer in the District, and it no longer receives services from the District. We find no equal protection violation on the present facts.[6]

## CONCLUSION

We find that, once annexed to the City of Charleston, the properties in question were no longer "in the District" and were, therefore, properly removed from District's tax base. To hold that District property becomes liable upon **issuance** of bonds, without regard to its subsequent annexation, would render property liable for debt service for years, notwithstanding the property is annexed to a municipality immediately following issuance of the bonds. We decline to reach such an incongruous result. We are not unmindful, however, of District's dilemma inasmuch as its tax base has been eroded. Although we recognize that this is a quandary needing resolution, it is not the province of this Court to sit as a legislative body to fashion a remedy for problems which the General Assembly has not addressed. Accordingly, we leave it to the wisdom of that body to deal with the present situation.[7] The judgment below is

Affirmed.

---

[6] On the contrary, it is arguable that a converse holding may give rise to an equal protection violation. *Cf. Casey v. Richland County Council*, 282 S.C. 387, 320 S.E. (2d) 443 (1984) (assessment on residents who received no benefit from new sewer system violated equal protection).

[7] The Legislature has however addressed this problem in other contexts. *See e.g.*, S.C. Code § 5-3-312 (Supp. 1995) (requiring city to assume obligations upon annexation pursuant to § 5-3-300); Act. No. 972, 1960 S.C. Acts 2282 and Act No. 495, § 1, 1961 S.C. Acts 913 (requiring city to assume obligations after 1960 and 1961 annexations).

Finney, C.J., Moore and Burnett, JJ., and George T. Gregory, Jr., Acting Associate Justice, concur.