## 22749

Walter R. ROBINSON and Harold Murray, Individually and as taxpayers, Appellants v. RICHLAND COUNTY COUNCIL as the governing body of Richland County and Dean Hunter, Jr. as County Administrator of Richland County, South Carolina, Respondents.

(358 S. E. (2d) 392)

Supreme Court

*I. S. Leevy Johnson* and *William T. Toal*, both of *Johnson, Toal & Battiste, P.A.*, Columbia, *for appellants.*

*Margaret C. Pope, Belton T. Zeigler, William L. Hirata,* all of *Sinkler & Boyd Professional Association,* and *Richland Co. Atty. William F. Able,* Columbia, *for respondents.*

July 6, 1987.

NESS, Chief Justice:

In this Declaratory Judgment action both parties sought a ruling on the validity of Act No. 386 of 1965, S. C. Code Ann. § 6-1510 to -140 (1977), as amended by Act No. 499 of 1986, and on the validity of certain ordinances adopted by Richland County Council in reliance on those statutes. The trial judge upheld the Act and the ordinances. We affirm.

The Greenview-Fairworld Area of Richland County is a residential area containing small homesites. Many of the homes have septic tank systems which are undersized and frequently malfunction. The area has a high water table and poor soil. The septic tanks clog and sewage seeps onto the ground or the tanks back up and toilets, sinks and tubs fill with sewage. Richland County health workers have seen children riding their bikes and playing in areas contaminated with septic tank effluent. The area is seriously in need of sewer facilities.

In 1986, S. C. Code Ann. § 6-15-60 (Supp. 1986) was amended to allow counties, as well as municipalities and special purpose districts, to impose charges on properties served by sewer facilities. The charges may be set at a level sufficient to cover operational and maintenance costs and to provide debt service on bonds or other obligations issued to provide sewer collection, disposal or treatment service. Additionally, a sewer connection charge may be imposed.

Pursuant to this statute, Richland County enacted a Master Special Sewer District Ordinance (Master Ordinance). The Master Ordinance set up a framework for the county to designate certain areas in need of sewer facilities and to impose charges on persons or property receiving sewer service in those areas.

Subsequently, the County enacted "An Ordinance to Provide for the Creation of the Greenview-Fairworld Sewer Assessment District ..." (Supplemental Ordinance). This Ordinance provides for imposing charges and issuing bonds to finance sewer lines in the Greenview-Fairworld area. Three (3) charges are authorized: (1) a "Capital Sewer Service Charge" adequate to defray the cost of building the sewer facilities; (2) a "Sewer Connection Charge" to defray

the cost of connecting users to the system; and, (3) a "Sewer Service Charge" to defray operational and maintenance costs.

Taxpayers (appellants) argue Act 499 is unconstitutional because it violates Article VIII, § 7 and 14 of the South Carolina Constitution. We disagree.

■ A legislative act will not be declared unconstitutional unless its repugnance to the constitution is clear and beyond a reasonable doubt. *University of South Carolina v. Mehlman*, 245 S. C. 180, 139 S. E. (2d) 771 (1964). A legislative enactment will be declared unconstitutional only when its invalidity appears so clearly as to leave no room for reasonable doubt that it violates some provision of the constitution. *Id.*

Taxpayers argue the legislature had only one chance to enact legislation pursuant to Article VIII, § 7 of the Constitution. They argue once the Home Rule Act was enacted the legislature lost authority to enact any further legislation dealing with bonded indebtedness of counties or the structure and administration of any governmental services. Article VIII, § 14.[1]

■ We believe this is an incorrect reading of Article VIII, § 14. Rather, that section precludes the legislature from delegating to counties the responsibility for enacting legislation relating to the subjects encompassed by that section. *Cf. Douglas v. McLeod*, 277 S. C. 76, 282 S. E. (2d) 604 (1981) ["Paragraph 14 (4 and 6) of Article VIII effectively withdraws administration of the State judicial system from the field of local concern."] Additionally, Article VIII, § 14 precludes the legislature from creating exceptions from the general constitutional and statutory requirements for an individual county. It does not limit the power of the legislature to create alternate means, by general law, for counties to exercise constitutional powers.

---

[1] § 14. *General law provisions not to be set aside.*

In enacting provisions required or authorized by this article, general law provisions applicable to the following matters shall not be set aside:

... (3) bonded indebtedness of governmental units; ... and (6) the structure and the administration of any governmental service or function, responsibility for which rests with the State government or which requires statewide uniformity.

Article X, § 12 of the Constitution prohibits counties from incurring bonded indebtedness for sewage disposal or treatment which benefits only a particular area unless a special assessment, tax or service charge, adequate to provide debt service on the bonds, is imposed on those persons who will benefit from the service. The lower court ruled the provisions for creating special tax districts contained in § 4-9-30(5)(a)-(c) did not exhaust the power of the legislature to specify the means by which counties could impose the assessments, taxes and charges required by Article X, § 12. We agree. Act 499, which deals with assessments and special charges and not with taxes, simply gives counties another way to comply with Article X, § 12.

Taxpayers also argue Act 499 is unconstitutional because it allows residents of one county to be treated differently than residents of other counties. They argue the Home Rule Act was intended to make county government uniform throughout the State. We disagree.

"The uniformity contemplated by the Home Rule Act is the realization of complete local autonomy." *Infinger v. Edwards,* 268 S. C. 375, 234 S. E. (2d) 214 (1977). Implicit in the Act is the realization that different counties will have different problems which will require different solutions. To require all counties to use the same means of financing for local improvements would defeat the objective of achieving complete local autonomy.

Taxpayers next argue the means chosen to finance the sewer project are a denial of equal protection. They assert residents in the neighboring areas, whose sewer lines were paid for with Community Grant funds, should also be required to pay capital sewer service charges.

Equal protection requires a classification not be arbitrary and there be reasonable relationship between the classification and a proper legislative purpose. *Carll v. South Carolina Jobs-Economic Development Authority,* 284 S. C. 438, 327 S. E. (2d) 331 (1985). The requirements of equal protection are satisfied if (1) the classification bears a reasonable relationship to the legislative purpose sought to be effected; (2) the members of the class are treated alike under similar circumstances and conditions; and (3) the classification rests on a reasonable basis. *Smith*

*v. Smith*, 291 S. C. 420, 354 S. E. (2d) 36 (1987). The determination whether a classification is reasonable is initially one for the legislative body and will be sustained if it is not plainly arbitrary and there is any reasonable hypothesis to support it. *Id.*

The purpose of the ordinances is to promote the ■ health and welfare of the residents of the area and is clearly proper. Taxpayers' argument that neighboring property owners should be required to pay capital sewer charges is without merit. *See Casey v. Richland County Council*, 282 S. C. 387, 320 S. E. (2d) 443 (1984) (Assessment on residents who would not benefit from new sewer system because they already received sewer service from other systems violated equal protection.).

In addition, Article X, § 12 of the Constitution *requires* the charge be assessed only on those who will benefit from the new facilities. An increase in property values in the adjoining area because of the new sewer lines is not sufficient to bring adjacent landowners within the class of those who "benefit" from the project.

Taxpayers further argue the County Funding Formula imposes a burden on landowners in the sewer district in an amount proportionate to the wealth of their neighbors and is thus also a denial of equal protection.

The trial court found the method chosen, while undoubtedly not the most precise available, was not arbitrary, irrational or without reasonable relation to the legislative goal of matching assistance to some index of need.

Taxpayers argue the trial judge erred in using the reasonable relationship test because the funding formula bases the amount of the assessment for one area on the wealth of one's neighbors and is therefore inherently suspect and subject to "close scrutiny."

Wealth is not a suspect classification requiring strict ■ scrutiny. *San Antonio Independent School District v. Rodriguez*, 411 U. S. 1, 93 S. Ct. 1278, 36 L. Ed. (2d) 16 (1973). The trial judge did not err in determining the finding formula was constitutionally permissible.

Taxpayers also argue the hybrid funding of the project requires a conclusion that either Article X, § 12 or Article X, § 6 of the Constitution has been violated. We disagree.

The funding for this project will come in part from the property assessments and in part from Federal Revenue Sharing Funds. Taxpayers argue the use of the federal funds is impermissible under Article X, § 12. That section requires the funding for a sewerage facility which will benefit only a particular geographical area come from a special assessment on those persons benefited.

Article X, § 12 limits the power of counties to impose general taxes to defray the cost of bonded indebtedness incurred to build local improvements. The revenue sharing funds to be used here were neither raised nor borrowed by the county and, therefore, the limitations imposed by Article X, § 12 are not implicated.

Alternatively, taxpayers argue the charges imposed either are taxes or should be taxes, and are not assessments. Therefore, appellant argues Article X, § 6, requiring taxes be uniformly imposed has been violated. We disagree.

Taxes are imposed on all property for the maintenance of government while assessments are placed only on the property to be benefited. *Casey v. Richland County Council, supra.* To be an assessment, the improvement must confer a benefit on property distinguishable from the general benefit enjoyed by surrounding areas. *Id.*

The charge imposed here is clearly an assessment. It does not become a tax merely because the general public obtains a health benefit from the elimination of the sewage problem. *Casey v. Richland County Council, supra.*

Taxpayers argue § 6-15-60 allows only the imposition of a "sewer service charge" and not a "capital sewer service charge." South Carolina Code Ann. § 6-15-10(9) (Supp. 1986) defines "sewer service charge" as "any charge imposed ... for services rendered in the collection, disposal or treatment of sewage."

Taxpayers' argument is without merit. In addition to authorizing a "sewer service charge," § 6-15-60 states the charge "... may, in the discretion of the its governing body be sufficient ... to provide debt service on bonds or other obligations of the governmental entity issued to provide any type of sewer collection, disposal or treatment service ..."

34

The capital sewer service charge is clearly authorized by this language.

The order of the trial judge is

Affirmed.

GREGORY, HARWELL, CHANDLER and FINNEY, JJ., concur.